**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------- x
      :
CITIZENS UNITED TO PROTECT OUR    :
NEIGHBORHOODS, HILDA KOGUT, ROBERT  :
ASSELBERGS, and CAROLE GOODMAN    :  No.
      :
    Plaintiffs,      :
      :
    v.       :  **COMPLAINT**
      :
VILLAGE OF CHESTNUT RIDGE, NEW YORK  :
      :
    Defendant.    :
      :
      :
      :
------------------------------------------------------------------------- x

Plaintiffs CITIZENS UNITED TO PROTECT OUR NEIGHBORHOODS ("CUPON"), HILDA KOGUT, ROBERT ASSELBERGS, and CAROLE GOODMAN (collectively, "Plaintiffs") by and through their attorneys, Cozen O'Connor and Marci Hamilton, hereby complain of Defendant, the VILLAGE OF CHESTNUT RIDGE, NEW YORK ("Defendant") as follows:

### Nature of the Action

1.    This is an action for Declaratory and Injunctive relief seeking a declaration that the Defendant has and continues to engage in activities that have established and continue to establish religion contrary to the prohibition contained in the Establishment Clause of the First Amendment of the United States Constitution, which is made applicable to the Village through the Fourteenth Amendment to the United States Constitution. In addition, Defendant is violating Plaintiffs' constitutional rights to equal protection and due process in the land use process by instituting zoning laws that target religious uses with special favorable treatment over secular uses. Through

Defendant's actions, a single religious organization, the Orthodox Jewish Coalition (the "**OJC**") has been provided significant promotion, endorsement, and reinforcement of its religious mission. Defendant's actions serve the purposes of the OJC, have the effect of favoring the OJC, and are a result of entanglement between government and the OJC.  Plaintiffs are forced to endure such government promotion, endorsement and reinforcement of a sectarian organization in violation of the First Amendment.

2.      Specifically, the Defendant, through its Mayor and/or Village Board enacted a new zoning law, which was largely drafted by the OJC (the "**OJC Zoning Law**").  The OJC Zoning Law completely changes the character of Chestnut Ridge.  Under the OJC Zoning Law, nearly the entire Village of Chestnut Ridge is now presumptively zoned for religious use.  In enacting the law, the Village affirmatively acted to give religious uses a preferred status.  The enactment and enforcement of the OJC Zoning Law violates the Establishment Clause and thus is an immediate and ongoing harm that warrants relief.

3.      While the Mayor and Board members argued that the OJC Zoning Law was required under the Religious Land Use and Institutionalized Persons Act ("**RLUIPA**"), that is not the case.  To the contrary, RLUIPA "shall not be construed to affect, interpret, or in any way address that portion of the first amendment to the Constitution prohibiting laws respecting an establishment of religion." 42 U.S.C. § 2000-cc.

4.      Plaintiffs stand behind the First Amendment and all of its applications to local government.  Plaintiffs file this Action to restore the constitutional rights of everyone in the community, rights that the Village violated when it agreed to assist one religious organization to change radically the nature of the Village to benefit that religious organization.  The interests and

needs of the citizens of Chestnut Ridge, guaranteed by due process, were shoved aside in the process.

## Parties

5.     Plaintiff CUPON is a civic membership organization that advocates for, among other things, sensible and fair land use reform for all citizens of Chestnut Ridge.  CUPON opposed the OJC Zoning Law when it was first proposed in February 2018.  Instead, CUPON advocated that the Village conduct a comprehensive plan process and then amend its zoning laws in conformance with such a comprehensive plan, taking into consideration the needs of all residents and landowners of the Village—including (but not limited to) the OJC.  CUPON urged, consistent with the Establishment Clause, that any such zoning amendments not favor one religious organization over another and not favor religious use over secular use, as the Constitution requires.

6.     CUPON's membership includes individuals who are municipal taxpayers residing in the Village of Chestnut Ridge in the Southern District of New York.

7.     Individual Plaintiffs are municipal taxpayers and members of CUPON, residing in the Village of Chestnut Ridge, New York, who object to the use of Village tax dollars spent on the adoption and implementation of the OJC Zoning Law which gives preferential treatment to the OJC and religious uses over nonreligious uses.

8.     Plaintiff Hilda Kogut is a resident of the Village of Chestnut Ridge. She has resided in the Village since 1995.  She is a municipal taxpayer who objects to the use of Village tax dollars spent on the adoption and implementation of the OJC Zoning Law, which gives preferential treatment to the OJC and religious uses over nonreligious uses.

9.     Plaintiff Robert Asselbergs is a resident of the Village of Chestnut Ridge. He has resided in the Village since 1987.  He is a municipal taxpayer who objects to the use of Village tax

LEGAL\40769083\1

dollars spent on the adoption and implementation of the OJC Zoning Law, which gives preferential treatment to the OJC and religious uses over nonreligious uses.

10.     Plaintiff Carole Goodman is a resident of the Village of Chestnut Ridge.  She has resided in the area since 1965, before the Village was incorporated.  She is a municipal taxpayer who objects to the use of Village tax dollars spent on the adoption and implementation of the OJC Zoning Law, which gives preferential treatment to the OJC and religious uses over nonreligious uses.

11.     Defendant Village of Chestnut Ridge, New York is a municipal corporation of the State of New York, having offices at 277 Old Nyack Turnpike, Chestnut Ridge, New York 10977, which, through its governing body, adopts and enforces the land use regulations of the Village.

## Jurisdiction and Venue

12.     This is a civil action claiming violations of the First and Fourteenth Amendments of the Constitution of the United States of America.  This Court has jurisdiction under 28 U.S.C. § 1331.

13.     This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. Pro. 57.

14.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. Pro. 65.

15.     This Court has personal jurisdiction over the Defendant, which is located within the district and the alleged incidents occurred within the district of this Court.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred and continue to occur in this District.

LEGAL\40769083\1

## Factual Allegations

### The Village

17.     The Village of Chestnut Ridge is located within the Town of Ramapo in Rockland County, New York.

18.     Rosario Presti, Jr. is the current Mayor of the Village of Chestnut Ridge.  The Village also has a Board of Trustees, which included the following members during the entire consideration of the Zoning Amendments, all of whom (along with Mayor Presti) voted in favor of the OJC Zoning Law: Deputy Mayor Grant Valentine, Trustee Howard Cohen, Trustee Richard Miller, and Trustee Paul Van Alstyne.  These individuals along with Mayor Presti constitute the Village Board.

19.     Collectively, the Mayor and the Village Board are responsible for, inter alia, (1) enacting and enforcing local laws and ordinances; (2) establishing and implementing Village policy; (3) managing the affairs of the Village; (4) keeping the peace and protecting the public health, safety, and welfare of Village residents; (5) providing public services to Village residents; and (6) otherwise carrying out all other duties provided by, and consistent with, the Constitution, laws, rules, and regulations of the State of New York and the Constitution of the United States.

20.     In enacting the OJC Zoning Law, the Village Board misused, and continues to misuse, its governmental authority, by favoring a specific religious organization and by favoring religious land use over secular land use.

21.     Under New York law, the Village is required to regulate the development and use of land in the Village and of the structures built thereupon in a fair, non-discriminatory manner for all citizens. *See* N.Y. Village Law § 7-700.

22.    The Village enacted comprehensive Zoning Laws when it was incorporated in 1986 (the "**Original Zoning Laws**").

### The Village Zoning Laws and Lack of a Comprehensive Plan

23.    The Village of Chestnut Ridge is largely a high-quality, low-density, single-family neighborhood of quiet wooded and suburban character.  Since 1986, when the Village was incorporated, it has been zoned primarily for single-family residences.

24.    New York State Village Law section 7-722 encourages Villages to adopt comprehensive plans and make all major changes—including changes to zoning laws—in accordance with (and consistent with) a comprehensive plan.  "The village comprehensive plan is a means to promote the health, safety and general welfare of the people of the village and to give due consideration to the needs of the people of the region of which the village is a part."

25.    On July 24, 2018, Mayor Presti, conceding that the Village did not have a comprehensive plan, erroneously concluded that "to do an entire comprehensive plan of this Village would probably take close to" three or four years.  At the same meeting, Presti said "for the nine or ten years I was on the Planning Board, while as much as it was discussed [i.e., adopting a comprehensive plan], it never happened."[1]

26.    On August 28, 2018, Alan Sorenson, a professional planner hired by CUPON, spoke at the village meeting and, after noting that the Village of Chestnut Ridge did not have a comprehensive plan, strongly recommended that the Village develop one.

27.    On or about February 6, 2019, just weeks before the Mayor and the Village Board voted to adopt the OJC Zoning Law, the Village put out a Request for Proposal to hire a planner

---

[1] To the extent that one can argue the then-existing zoning laws and the decisions made by the Zoning Board constituted the Village's comprehensive plan, then to change the zoning laws without forming a new comprehensive plan is entirely contrary to the then-existing comprehensive plan.

to develop a comprehensive plan for Chestnut Ridge.  Nonetheless, and without a comprehensive plan in place, the Village Board went ahead with the adoption of the OJC Zoning Law—a law that radically transmogrifies the character of the Village.

28.     At a June 28, 2018, public meeting, Jonathan Lockman, the Chestnut Ridge Village Planner, noted that under the Original Zoning Laws, all places of worship were in one category, which permitted religious use by special permit approval and then site planning approval of the Planning Board.  Anyone seeking to use a single-family home or any other structure for organized, regular religious purposes, was always free to apply for and get permission through the typical variance process—the process that is familiar to landowners throughout the country.

29.     Under the Original Zoning Laws, Chestnut Ridge had multiple houses of worship including both formal and informal synagogues, a mosque, and Christian churches of various denominations including the Christian Community Church, Coptic Orthodox Church, and the Faith Assembly of God.  All of the formal houses of worship received the necessary permissions through the Original Zoning Laws, and the ordinary variance and permit process.

30.     The Original Zoning Laws required—absent a variance—that houses of worship be built and maintained on lots that were at least five acres.  Such houses of worship were a permitted use in all residential zoning districts: RR50, R40, R35, R25, and R15.

### The Madeline Terrace Concession

31.     In September 2015, the Village Board discussed a Special Permit application of Congregation Ohr Mordechai for 2 Madeline Terrace in Chestnut Ridge.

32.     Michael Klein spoke on behalf of the Congregation.   He explained that the Congregation wanted to raze the entire building and build a new one.  The Congregation was seeking to establish a neighborhood place of worship for up to 70 congregants who were required

7

to walk to a place of worship. According to Klein, "certainly the Board in reviewing [the application] in the zoning law [RLUIPA is] applicable; is a burden on religious use. If there is a denial of an application such as this; it's clearly a substantial burden on a religious exercise."

33.     Jesse Cokeley, an engineer, also spoke on behalf of the Congregation. He explained that the size of the lot was approximately 29,000 square feet, and the Congregation sought to build a synagogue approximately 9,000 square feet in size: between the first and second levels, the residential space would be approximately 3,500 square feet, and an additional 6,400 square feet, including a basement, for religious use. Cokeley estimated that the structure would cover about 15 percent of the total lot area. Cokeley believed that tearing down the existing structure and replacing it with a structure that could total *at least* 9,000 square feet or more would be "in kind" with the nature of the other structures in the area.

34.     In October 2015, the Village Board adopted a Resolution granting preliminary approval for a Special Permit to the Congregation. Upon information and belief, in 2015, the Zoning Board worked with the Congregation on the site plans and ultimately granted several variances, allowing the Congregation to develop its place of worship without any overhaul of the Village's then-existing Zoning Laws.

35.     Despite these approvals, on information and belief, the project was never built because of funding issues. But it is clear that the Congregation, under the then-existing Zoning Laws, had received the critical permission necessary to proceed with the process of establishing a house of worship without changing the zoning laws.

## The Spring Hill Terrace Debacle

36.     On February 11, 2016, Building Inspector Russell Gliniecki granted a building permit to Kedishas Aharon D'hadas ("**Kedishas**"), a religious corporation. The permit was for the

LEGAL\40769083\1

construction of what Kedishas described as a "3 car garage" located at 3 Spring Hill Terrace in Chestnut Ridge.  Drawings of the proposed "3 car garage" were submitted to the Village on May 8, 2017.  On September 20, 2017, a Certificate of Occupancy was issued for the structure.

37.     Neighbors, including Plaintiff Kogut, submitted an appeal to the Zoning Board of Appeals ("**ZBA**") to revoke the Certificate on September 26, 2017, based on the fact that the drawings of the proposed structure were inconsistent with a 3 car garage, as well as eyewitness testimony, photographic and video evidence that the "garage" was actually being used as a house of worship in violation of the Village's Zoning Laws, which required a special permit.

38.     The applicant never disclosed that its intent was to construct a house of worship and not a 3 car garage.  The "3 car garage," which is actually a synagogue, dwarfs the size of the house at 3 Spring Hill Terrace.

39.     At a ZBA meeting on January 29, 2018, the ZBA voted to revoke the Certificate, and on or about March 20, 2018, the ZBA filed its official decision.  The application for the permit falsely stated the sole purpose of the structure was as a "3 car garage," and at the ZBA meeting, Wolf Rosenberg, the President of the Congregation, repeated these false representations that the structure was a garage and only a garage.  Nevertheless, on March 21, 2018 (just a day after the ZBA issued its decision revoking the original certificate), Village Attorney Walter Sevastian approved the issuance of a new certificate for the synagogue.

40.     Kedishas nevertheless sued the Village and the ZBA for invalidating the original Certificate in the New York Supreme Court, Rockland County, on April 19, 2018.  The collusive lawsuit was dismissed on August 6, 2018, when the Village and Kedishas came to a "settlement" that allowed the issuance of the new certificate and completely circumvented the ZBA and ignored the text of the Village's Zoning Laws.  By then, however, the Mayor and the Village Board,

working for the OJC's benefit and in conjunction with the OJC, were well on their way to changing the Village's Zoning Laws.

41.     Upon information and belief, other than the collusive lawsuit over the "garage" at 3 Spring Hill Terrace, there have been no claims or challenges to specific actions or decisions of the ZBA regarding houses of worship.

## The Origin of the OJC Zoning Law

42.     In enacting the OJC Zoning Law, the Mayor and the Village Board acted in a joint and concerted fashion with the OJC and its members, endorsing and showing preference for a particular religion and for religious land use over nonreligious land use.

43.     Upon information and belief, starting in 2017 the Village, through Mayor Presti and Village Planners, exchanged emails, texts, and phone calls, and held meetings with the OJC, to discuss implementing the OJC Zoning Law.

44.     Upon information and belief, the OJC provided the draft law to the Village—and to no one else—in August 2017.  An invoice dated October 5, 2017 (obtained through a FOIL request to the Village) from Nelson Pope & Voorhis, LLC, ("**NPV**") a firm hired by the Village for planning services, indicates that on August 15, 2017, NPV planner Maximilian Stach reviewed "OJC Draft Zoning."  He also indicated in his billing records that he arranged a meeting with the OJC ("Arrange Mtg,").  Thus, as of August 15, the OJC had already given the draft of its proposed law to the Village's planner.

45.     On August 17, 2017, Stach again billed time for reviewing "OJC Zoning."  His billing records also indicate that he contacted Liz Mello, who was at that time was a Senior Project Manager at Brooker Engineering, PLLC ("**Brooker**"), a civil engineering firm working on behalf of the OJC.

46.    On August 18, 2017, Stach billed time for reviewing "OJC Law and Follow[ing] up with R. Presti," referring to Mayor Presti.

47.    And on September 6, 2017, Stach's billing records indicate that he met with Mello and Stuart Strow, a partner at Brooker.

48.    Another invoice, this one dated December 20, 2017 (also obtained through a FOIL request) shows that the Village planner billed time to "Review Proposed Religious Zoning" and conversation with Mayor Presti and Mello from Brooker regarding that "Proposed Zoning" on November 3, 2017.

49.    Upon information and belief, during a Planning Board Workshop Meeting on March 1, 2018, attended by NPV and Paul Baum, the Assistant Village Attorney, Village Planning Board Member Anthony Luciano asked Stach whether members of the OJC were present at the drafting meetings for the OJC Zoning Law.  Stach advised that members of the OJC were present and participated in the drafting meetings, but that he could not remember the names of individuals who attended, or the comments that they made.

50.    A third NPV invoice, dated March 29, 2018, shows that on February 8, 2018, two weeks before the OJC Zoning Law was made public, Max Stach billed time for a meeting with the Mayor and Strow (from Brooker) to "Revise recommended zoning amendments."

51.    The Village, through Mayor Presti, directed its Planning and Zoning staff to perform all work necessary, including planning reports and planner recommendations, to enact the OJC Zoning Law, thus radically changing the permitted use of property within the Village's zoning districts with regard to houses of worship.  These changes were for the sole purpose of favorably benefiting the OJC and its constituents and allowed essentially blanket permission to use property

LEGAL\40769083\1

for organized, regular religious purposes, constituting an end-run around the permitting process in violation of the constitutional prohibition of advancing, endorsing or promoting of religion.

52.   The OJC Zoning Law was initially drafted by the OJC and its experts, and the minor changes to the proposed law were the product of negotiations and excessive entanglement between the Mayor and the Village Board, on one hand, and the OJC along with its engineering firm, Brooker Engineering, on the other.   These discussions, negotiations and drafting sections were done in secret and intentionally excluded other churches, mosques, planners, and village residents.

53.   The Village's responses to the FOIL requests described above show that aside from the planner's invoices provided, there were no records of the meetings and no way to know whether those meetings complied with New York's Open Meetings Law.

54.   The OJC Zoning Law was initially publicly disclosed at the Village Board meeting on February 22, 2018.  It was described in a document dated February 9, 2017 (although Mayor Presti claimed the date was an error and should have read February 9, 2018).

55.   The proposed OJC Zoning Law was referred to in the document as the "House of Worship" amendments.  With the directive given to develop a process to ensure that the OJC would be allowed to use these blanket variances, the proposed law created entirely new categories of religious uses and houses of worship under the definition of permitted uses as then contained in the Village's Zoning Laws.

56.   The proposed OJC Zoning Law provided for the establishment of three categories of Houses of Worship: "residential places of worship," "neighborhood places of worship," and "community places of worship."  The proposed law allowed for a "residential place of worship" as a permitted use in single-family dwellings within the each of the Village's zoning districts. Later, perhaps in a vague nod to the Establishment Clause, the term "residential place of worship"

was changed to "residential gathering place."  The proposed law allowed the OJC to acquire single-family dwellings and open them to religious activities subject to additional parking requirements, but also with a blanket variance in development coverage, doubling the percentage of the property unit that could be developed as described below, far in excess of any other non-religious building or use in the same zoning districts.

57.    The initial draft of the OJC Zoning Law provided that the changes were proposed "to remove impediments to the free practice of religion, such as allowing for smaller-scale places of worship customary to Orthodox Congregations which are precluded from driving on Holy Days."

58.    The OJC Zoning Law was added to the agenda for that meeting with less than two days' notice for the Village residents.

59.    Mayor Presti opened the meeting on February 22 by stating "There is a statutory provision for us to accommodate the establishment of Houses of Worship in Residential Zoning Districts, both Federal and State law; end of story."  He identified "applying for what may be considered an unusual amount of variances, or things of that nature" with respect to establishing a house of worship, as being in violation of Federal and State law.

60.    On February 22, 2018, when the OJC Zoning Law was first made public, Mayor Presti confirmed that as long as the application for the residential gathering place "complies with village law," the text of the OJC Zoning Law, a special permit would automatically be approved in favor of the applicant.  Any secular proposal of similar size and impact would not receive the special treatment accorded to the OJC by the Village.  No other religious entity has ever asked for or received similar Village assistance in exceeding established land use laws, ordinances, and regulation in the history of the Village.

61.     When questioned why there were no other religious organizations or members of the community sitting at the table while the OJC Zoning Law was being drafted, Mayor Presti replied, "We tried to get some feedback. I don't know all my religions."  But on information and belief, there were no efforts made to include other views of Village residents.

62.     On February 27, 2018, Plaintiffs submitted a FOIL request for "correspondence, e-mails or any meeting minutes related to the collaborated effort by the Village Board, 2 planning firms, 1 hired by the Village and 1 retained by a private group" resulting in the February 9, 2017 Memorandum to Florence Mandel, the Village Clerk for Chestnut Ridge.  In response, the Clerk stated that "[t]he records that you requested in your FOIL request of 2/27/18 do not exist."

63.     In response to the chaotic unveiling of the OJC Zoning Law, the Village Board held several meetings in 2018 about the proposed law.  At the initial meeting, and at several of the meetings afterward, Village residents and attorneys warned that the proposed "House of Worship" Laws could open the Mayor, the Trustees, and the Village up to a lawsuit under the Establishment Clause.  At no time were the secret meetings and agreed-upon arrangements between the Village and the OJC disclosed to the public or to these Plaintiffs.  Further, at no time was it disclosed to the public that the adoption of the OJC Zoning Law was done for the sole purpose of specifically advancing the religious interests of the OJC.

**Village Planning Board Memorandum**

64.     On May 29, 2018, the Village Planning Board presented the results of its review of the OJC Zoning Law by memorandum, stating:

> While the Planning Board recognizes that the Village Board feels the Zoning Code has to be amended to provide reasonable accommodation for the needs of religious uses, we feel the provisions of this Local Law have the potential to significantly disrupt the peaceful and quiet harmony associated with single family zoning districts and alter single family neighborhoods and impact the quality of life on the residents of the Village. *A proliferation of houses of worship at the scale permitted*

14

*by the Local Law will negatively impact homeowners by allowing for large structures to be built in single family zones.* The associated parking issues, noise, and traffic can severely impact the neighboring single family dwellings, especially if more than one place of worship is sited on a single block.

(emphasis added).

65.     The Village Planning Board recommended that the Village adopt a comprehensive master plan consistent with state law before "entertaining" the OJC Zoning Law.

66.     The Planning Board questioned "why only the input of one religious organization (the Orthodox Jewish Coalition) was considered in connection with the drafting of the" OJC Zoning Law.  Significantly, the Planning Board stated that the OJC Zoning Law "is designed to favor one religious institution over another," and that it was "concerned that it may be unconstitutional and prohibited pursuant to the Establishment Clause of the First Amendment."

67.     In addition, the Planning Board raised concerns regarding the ability of the Village to enforce the proposed limitations in the OJC Zoning Law as to the size of gatherings in the Residential Places of Worship; the automatic granting of a development coverage bonus of 10% over that permitted for a single-family home to each and every Residential Place of Worship— doubling the development coverage for most lots; the fact that there were no restrictions on activities that were not "regularly scheduled"; and the Village's failure to address what would happen should a Residential Place of Worship cease to be used as a single-family dwelling or cease to be used as a place of worship.

68.     As to Neighborhood Places of Worship, the Planning Board recommended that the category be eliminated entirely from the OJC Zoning Law, stating that the Neighborhood Places of Worship category "*is too intense of a use to be permitted on standard size residential lots.*" (emphasis added).

69.     Notwithstanding the foregoing, the majority of the Planning Board's comments and recommendations were ignored by the Village, and were not incorporated in any revisions to the OJC Zoning Law.

### June 28, 2018 Meeting

70.     The first public hearing on the OJC Zoning Law occurred on June 28, 2018.

71.     Jonathan Lockman, a Chestnut Ridge Village Planner, explained the first draft of the OJC Zoning Law.  There would be three categories for houses of worship.  The first category was referred to as residential places of worship.  That first category would allow religious assemblies in existing homes.  The second category, neighborhood places of worship, would be small scale for places of worship with up to 300 congregants.  The required FAR would be the same as the FAR for one-family detached homes.  The maximum floor area of any building in this category is 10,000 square feet.  The minimum lot size would be the same as required for one-family homes.  The third category proposed is community places of worship.  These would be large scale community places of worship that could hold over 300 congregants.  The minimum lot size would be five acres.  For the residential place of worship and neighborhood place of worship, a conditional use permit would be required from the Planning Board.  For the community level place of worship, a special use permit from the Village Board would be required in addition to the Planning Board review.  The changes to the proposed regulations of places of worship "are not believed" to impact free exercise of any religion.

72.     Mr. Green, an attorney representing the Orthodox Jewish Coalition, stated that in the event that the Village adopted the OJC Zoning Law and the Village is sued, that they, the OJC, were prepared to work to assist the Village in defense of the law.  Mr. Green stated: "We're going

a long way to bringing the Village into compliance with the law for you to adopt this ordinance and, again, I commend you and thank you very much."

73.     Alan Sorenson, a professional planner, stated that the OJC Zoning Law has the potential to fundamentally change the nature of the community, but also to have significant environmental impacts.  As the law proposed, places of worship would now be allowed in over 90 percent of the geographic area of the Village.

74.     The comments of the Village's own Planning Board confirms Mr. Sorenson's opinion.  The Planning Board noted that with residential places of worship and neighborhood places of worship there is no limit to how many can be on a single block.  The result would amount to massive structures with significant variances as to what was previously allowed under the Zoning Laws.

75.     In defense of the OJC Zoning Law, Mayor Presti again attempted to explain why the OJC was so involved in the drafting and planning process: "What happens is someone needs to either advise or consult with us to say this is something that you should be thinking about, then what happens is as a Board of Trustees at a workshop, we say okay, why don't you draft something for us to consider, then what happens is-what happened is the planner drafted the first draft of what's before us this evening, the planner presented it to us in February of 2018 there was a typographical error on the memorandum."

### July 24, 2018 Meeting

76.     The second public hearing on the OJC Zoning Law was held on July 24, 2018.

77.     On July 24, 2018, Mayor Presti stated that doing nothing was not an option.

78.     Mr. Cohen, a trustee of Chestnut Ridge, confirmed that the Village Board, the Zoning Board, the Planning Board, and the Building Department of Chestnut Ridge have not been

enforcing the Village's zoning laws since people have been able to put synagogues in their houses and invite people in to pray with them without any Village or zoning oversight, confirming that no applications for permits or variances were being made.

79.     Mayor Presti defended these actions stating that "substantial burden is the definition of what is the process to get the application shepherded through the various boards within the community, whether it be Chestnut Ridge, whether it be any other village in Rockland County or the United States for that matter.  Again, so substantial burden is the process and having to go to board after board and back to board after board that goes to the possibility of that being a substantial burden."  The implication, of course, was that no religious individual or entity should be required to go through the permitting or variance process or follow the same land use rules that nonreligious individuals or entities must.

### August 16, 2018 Meeting

80.     At the Village Board Meeting on August 16, 2018, Village resident Sabrina Martin asked the Mayor why it was only one organization that represented one particular group that was included in the drafting and discussion with regards to the OJC Zoning Law.  Mayor Presti replied that the OJC, representing its religious group, offered up a need from its community and that laws "have to start somewhere."  Thus, a religious group asked the Village to consider Zoning Laws in advocacy for their particular religious uses and their particular community, allowing for the Defendant to become excessively entangled with a particular religious group and viewpoint. Mayor Presti baldly stated that there was nothing wrong with the Village's failure to seek input from individuals and other religious and nonreligious organizations on the OJC Zoning Law.

81.     Trustee Grant, a member of the Village Board, informed the audience that there was a group that had been asked to attend the initial drafting meetings because of their health, safety, and welfare, because they walk to their particular place of worship, referring to the OJC.

82.     Mayor Presti later admitted that the Village's enforcement of its zoning laws has not been good, and, as a consequence, the Village does not properly or seriously enforce its building code or Zoning Laws.

83.     In order to explain why the Village was considering passing the OJC Zoning Law, Mayor Presti described what he believed was the law: "You have a prayer group in your home on a regular basis.  You're not a Minister, you're not a Rabbi, you're not Clergy.  You're having organized religious services; while the law says we cannot prohibit, we can set [parameters] so long as those [parameters] are not burdensome.  So, now we have now morphed from your having a prayer service or a book club, or whatever you want to call it, to now organized religious assembly and that's what we have to address.  And that's what the House of Worship Law is to address."

84.     Mayor Presti continued: "You could have with a residential House of Worship where the Rabbi or the officiant is living in the home, and a portion of the home is for organized, religious services and a portion of the home for the officiant living in that home.  The owner of that home is going to go to the Town, whether it be Ramapo, Clarkstown, Orange town and they are going to apply for a partial tax exemption which the State has certain [parameters] that they have to follow.  Theoretically, in your home a portion for resident and portion for organized religious services.  As long as you comply with what the statutory regulations are, you will get a portion of a tax exemption."

**January 15, 2019 Meeting**

85.     The Village held its final public hearing on the OJC Zoning Law on January 15, 2019.

86.     At the meeting, Mayor Presti stated: "We have been going at this, folks, since February of last year *officially*.  *Officially*.  The planner put together the idea and a basic draft in around of [sic] November of 2017." (Emphasis added).  The Mayor did not specify which planner put together the idea, and which draft was created in November 2017.

### The OJC Zoning Law

87.     On November 1, 2017, Brooker Engineering, on behalf of the OJC, provided the Mayor and Village Planner Max Stach with the text of the OJC Zoning Law, in what the Village referred to as a "petition."

88.     This "petition" was attached as an Exhibit to the Resolution eventually adopted to enact the OJC Zoning Law.

89.     Upon information and belief, under local law, in order to amend the Village Zoning Code, it must be done either upon a motion of the Village Board at the recommendation of the Planning Board, or by petition.  The Village points to the letter from Brooker on behalf of the OJC, which is clearly not a motion or petition, to enable it to enact the OJC Zoning law.

90.     In February 2018, Max Stach issued a Memorandum with the text of the OJC Zoning Law with "amendments."  The date on the Memorandum is February 9, 2017, which the Mayor subsequently claimed was a typographical error and should have read February 9, 2018.

91.     A side by side comparison of the November 2017 "petition" and the February "2018" Memorandum shows that the Village essentially copied the OJC's desired text into its initial draft of the zoning amendments, making only basic cosmetic changes to the OJC Zoning Law.

92.     On December 27, 2018, the Village Board issued a revision of the Proposed Local Law amending Local Law 20 of 1987, "The Zoning Law of Chestnut Ridge," regarding Places of Assembly/Houses of Worship.  Again, this revision contains substantially the same text as the initial draft provided by the OJC in November 2017 despite three public hearings, several comments from the Planning Board and from independent planners hired by Plaintiffs, as well as from the citizens of the Village recommending numerous changes to the OJC Zoning Law.

93.     The OJC Zoning Law establishes three categories of use: residential gathering place, neighborhood places of worship, and community places of worship.

94.     The OJC Zoning Law defines residential gathering place as the use of a dedicated portion of a one-family detached residence for large gatherings, for gatherings of at least 15 people and up to 49 people regardless of the size of the building, more than 12 times per year.  The law provides an automatic blanket variance for maximum development coverage for residential places of worship of 10 percent more than is permitted for one-family detached residences in the same zoning district.

95.     The OJC Zoning Law also allows for the owners of the residential gathering place to use off-site parking facilities on private property, including residential driveways in different ownership, or parking on public streets within 1,500 feet of the lot (more than a quarter of a mile away), for up to 50 percent of its required parking.  The Planning Board asked that the distance be reduced to 500 feet due to the significant impacts that provision would have on the community.  That request was ignored.

96.     The OJC Zoning Law defines a neighborhood place of worship as the use of a structure for regular organized religious assembly with a total floor area up to 10,000 square feet.  It allows for this use in a structure with or without a residential component, and may even be

allowed on a lot suitable for a single residential dwelling unit. But a 10,000 square-foot dwelling is a mansion. This use, too, allows for an automatic blanket variance for maximum development coverage of 10 percent more than for other, nonreligious uses in the same use group. There is no limit on the number of "neighborhood places of worship" on any given street or any given neighborhood.

97.     The OJC Zoning Law defines a community place of worship as the use of a structure designed for regular organized religious assembly with a total floor area of more than 10,000 square feet. Each of the new categories establishes maximum occupancy levels based on land size, rather than building size.

## The Collusive Lawsuit

98.     On January 15, 2019, the OJC, on behalf of its member congregations, together with Congregation Birchas Yitzchok, Congregation Dexter Park, Congregation Torah U'tfilla, and individual persons, filed a collusive lawsuit against the Village in this District. This lawsuit was filed precisely when the Mayor and the rest of the Village Board cited concerns over potential litigation as a reason to support passage of the OJC Zoning Law.

99.     The complaint contained a reference to a "Full Environmental Assessment Form" ("**FEAF**") regarding zoning regulations for places of worship. Upon information and belief,. the FEAF was uploaded to the website and made public on January 15, the same day the complaint was filed with this Court by Plaintiff religious organizations and included direct quotes from said form.

100.    The complaint alleged violations of the Free Exercise clause, Equal Protection, RLUIPA, and the New York Constitution against the Village.

22

101.    On April 11, 2019, Walter Sevastian, the attorney for the Village of Chestnut Ridge, filed a waiver of service form.

102.    Upon information and belief, there has been no further activity in that case.

**The Village Resolution**

103.    On February 21, 2019, the Village Board approved a resolution to adopt the OJC Zoning Law, "Local Law #1 of 2019," the religious house of worship amendments to the Village Zoning Laws.

104.    The Resolution states:

on or about November 1, 2017, the Village Board received a written petition requesting specific text amendments to the Chestnut Ridge Zoning Code from Brooker Engineering, PLLC, in letter form, submitted on behalf of the Orthodox Jewish Coalition of Chestnut Ridge…which proposed certain specific text amendments to the existing Chestnut Ridge Zoning Code to address a need for what Brooker Engineering referred to as 'a need for a number of varied synagogues within Village neighborhoods' to 'accommodate their religious need to pray within walking distance of their homes' (the letter also requested certain specific amendments to the Village's Zoning Code purporting to accommodate that particular religious practice).

105.    As set forth above, invoices from Max Stach indicate that the OJC, Brooker Engineering, and the Mayor, acting on behalf of the Village, had already been colluding to establish the OJC Zoning Law since at least August 2017, in direct contradiction with the date set forth in the Resolution.

106.    Astonishingly, in the text of the Resolution, the Village accuses its own citizens of "outright animus" and "discriminatory bias" against the Orthodox Jewish residents of Chestnut Ridge and members of the Village Board.  The Resolution contains outrageous endnotes in which the Village targets specific citizens by name and publishes their comments at a public hearing within the Resolution.

107.    On February 25, 2019, the OJC Zoning Law was submitted to the New York Department of State.

108.    On March 19, 2019, the Village held an election for Trustees to the Village Board. Upon information and belief, the OJC circulated a flyer supporting candidates who voted to enact the OJC Zoning Law.  The flyer urges readers to "protect our shuls [synagogues]!" and declares that "We must build upon our recent victory and show Hakoras Hatov [gratitude] to the Mayor and Village Trustees for bending over backwards to do what's right.  An objective village leadership is critical to implement the new House of Worship law."

109.    On March 21, 2019, an Article 78 proceeding was filed against the Village based on the fact that in the process of rushing to pass the OJC Zoning Law, the Village Board circumvented the appropriate process with regard to the State Environmental Quality Review Act ("**SEQRA**").

## **CLAIM FOR RELIEF**

### **Violation of the First Amendment to the U.S. Constitution**

110.    Paragraphs 1 through 111 are incorporated as if fully set forth here.

111.    The Establishment Clause of the First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion."  The Clause applies with full force and effect to the acts of local officials under the Fourteenth Amendment's Due Process Clause.

112.    The First Amendment's Establishment Clause requires government neutrality toward religion, and forbids the Village from endorsing one religion, preferring one religion over another, or religion over irreligion.

113.    The denial of constitutional rights is an irreparable injury *per se*.

24

114.    The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.

115.    Defendant's practices of favoring religious uses through the implementation of the OJC Zoning Law would have the purpose and effect of promoting, advancing, favoring, and endorsing religion.

116.    Defendant's practices of favoring religious uses through the implementation of blanket variances in the OJC Zoning Law constitutes the promotion and endorsement of religious uses over secular uses in violation of the Establishment Clause.

117.    The Village, through the OJC Zoning Law, has diverted and continues to divert, funds and resources through its municipal authority to enact zoning laws that favor religion over nonreligion.

118.    The OJC Zoning Law was intended to subsidize, promote, endorse, favor, and advance churches and religious organizations.

119.    The OJC Zoning Law discriminates against nonreligious groups and individuals including other places of residence or public assembly who cannot receive the same property benefits as they are not practicing religious clergy.

120.    The OJC Zoning Law provides such preferred property benefits by allowing a benefit for religious purposes that is unavailable to secular organizations and individuals, who must go through the normal approval and variance process in accordance with the Village's Zoning Laws.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiffs respectfully request that:

A.    This Court assume jurisdiction of this cause.

B.      This Court make a Final Declaration that the acts of the Defendant violated the First

Amendment to the Constitution of the United States.

C.      This Court grant Preliminary and Permanent Injunctive relief against the Defendant

enjoining enforcement of the Village's Zoning Laws as they pertain to houses of worship.

E.      This Court grant such other and further relief as this Court may deem just and proper.


Respectfully submitted by the Plaintiffs this 18th day of April, 2019.

Dated:          New York, New York
                April 18, 2019

                                COZEN O'CONNOR


                                By:_____/s/_____
                                        Michael de Leeuw
                                45 Broadway
                                New York, NY 10006
                                (212) 509-9400
                                *Attorneys for Plaintiff*

LEGAL\40769083\1