```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIZENS UNITED TO PROTECT OUR
NEIGHBORHOODS; HILDA KOGUT; ROBERT
ASSELBERGS; and CAROLE GOODMAN,

          Plaintiffs,

-against-

VILLAGE OF CHESTNUT RIDGE, NEW YORK,

          Defendant.

No. 7:19 CIV 3461 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

  Plaintiffs Citizens United to Protect Our Neighborhoods, Hilda Kogut, Robert Asselbergs, and Carole Goodman (collectively, "Plaintiffs") allege Defendant the Village of Chestnut Ridge, New York ("Defendant" or "the Village") violated the Establishment Clause of the First Amendment in its enactment of a new zoning law relating to houses of worship, Local Law #1 of 2019, by favoring only one religious group, the Orthodox Jewish Coalition. Before the Court are Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) and Proposed Defendants-Intervenors Congregation Birchas Yitzchok, Congregation Dexter Park, Congregation Torah U'tfilla, the Orthodox Jewish Coalition of Chestnut Ridge, and Agudath Israel of America Inc. (collectively, "Proposed Intervenors")'s motion to intervene in the action.

  For the following reasons, Defendant's motion to dismiss is GRANTED and Proposed Intervenors' motion to intervene is DENIED as moot.

## FACTUAL BACKGROUND

  The following facts are derived from the Complaint and the documents referenced therein

and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Citizens United to Protect Our Neighborhoods ("CUPON")—a civic membership organization that advocates for fair land use reform for citizens of the Chestnut Ridge—along with Plaintiffs Hilda Kogut, Robert Asselbergs, and Carole Goodman—residents of the Village of Chestnut Ridge—bring this action against Defendant, the Village of Chestnut Ridge, New York. ("Compl.," ECF No. 1 ¶¶ 5–10.)  Plaintiffs seek declaratory and injunctive relief for Defendant's alleged unconstitutional actions in enacting zoning laws that favor only the Orthodox Jewish Coalition ("OJC"), a religious organization, in violation of the Establishment Clause of the First Amendment of the Constitution. (*Id.* ¶ 1.)

## I. The Village of Chestnut Ridge

The Village of Chestnut Ridge is a municipal corporation located within the Town of Ramapo in Rockland County, New York. (*Id.* ¶¶ 10, 17.)  The Village is "largely a high-quality, low-density, single-family neighborhood of quiet wooded and suburban character." (*Id.* ¶ 23.) Since the Village's incorporation in 1986, it has been zoned primarily for single-family residences. (*Id.*) The Village has a mayor, Rosario Presti, and a Board of Trustees. (*Id.* ¶ 18.) Plaintiffs allege Mayor Presti and the Board of Trustees were responsible for enacting and enforcing local laws, ordinances, and policies, managing the affairs of the village, protecting the public health, safety, and welfare of residents, providing public services, and carrying out duties consistent with the New York and United States Constitutions. (*Id.* ¶ 19.)

Contrary to the encouragement of New York State Village Law Section 7-722 to adopt a comprehensive plan for the Village, and against a recommendation from CUPON's professional planner to do the same, the Village did not develop a comprehensive plan. (*Id.* ¶¶ 25–26.)

Accordingly, the Village did not have a comprehensive plan in place to follow or consider in enacting the new zoning law at issue. (*See id.* ¶¶ 24–27.)

## II.   Background Of The Village's Zoning Laws

Plaintiffs challenge Defendant's adoption of Local Law #1 of 2019 (the "New Zoning Law"). (*See id.* ¶ 103.) Prior to the new zoning amendments, the Village had laws that treated all places of worship in one category (the "Old Zoning Laws"). Under the old laws, all places of worship must have a special permit for religious use and site planning approval from the Village Planning Board and, absent a variance, houses of worship must be built and maintained on lots that were at least five acres. (*Id.* ¶¶ 28–29.) Anyone seeking to use a single-family home or other structures for organized religious purposes must apply for and receive permission through a variance process. (*Id.* ¶ 28.)

Under the Old Zoning Laws, the Village had multiple houses of worships of varying faiths and all formal houses of worships received the necessary permissions and variances. (*See id.* ¶ 29.) For instance, Plaintiffs allege that at least one congregation had received permission to establish a house of worship without the need to change the laws. In October 2015, the Village approved special permits and variances for the Congregation Ohr Mordechai for it to raze an entire building and build a new neighborhood place of worship "without any overhaul of the Village's then-existing Zoning Laws." (*Id.* ¶¶ 31–35.) Plaintiffs also allege that except for one lawsuit—which they claim was collusive—there were no other claims or challenges filed to the Zoning Board of Appeals regarding houses of worship. (*See id.* ¶¶ 36–41.)

## III.   Drafting And Proposal Of The New Zoning Law

Plaintiffs allege starting in 2017, the mayor and village planners exchanged emails, texts, phone calls, and held meetings with the Orthodox Jewish Coalition ("OJC"). (*Id.* ¶ 43.) In August

2017, OJC allegedly provided a draft of the proposed law to the Village. (*Id.* ¶ 44.) In August and September 2017, Nelson Pope & Voorhis ("NPV"), a firm hired by the Village for planning purposes, billed the Village for work related to review of the proposed zoning law from OJC. (*Id.* ¶¶ 44–48.) On March 1, 2018, a Planning Board Workshop Meeting was held among NPV, Assistant Village Attorney Paul Baum, Village Planning Board Member Anthony Luciano, and members of OJC. (*Id.* ¶ 49.) Plaintiffs allege that the drafting, negotiating, and drafting of sections of the New Zoning Law was "done in secret" between the Village and OJC and with intention to "exclude[] other churches, mosques, patterns, and village residents." (*See id.* ¶¶ 52–53.)

### A. February 22, 2018 Village Board Meeting

On February 22, 2018, the proposed zoning law was first publicly disclosed at a Village Board meeting, after providing less than two days' notice to Village residents. (*Id.* ¶¶ 54, 58.) The proposed zoning law was referred to as the "House of Worship amendments" which created new categories of religious uses and houses of worship under the definition of permitted uses as then contained in the Village's zoning laws. (*Id.* ¶ 55.) The proposed zoning law established three categories of Houses of Worship: (1) "residential places of worship," which was later changed to be called "residential gathering place"; (2) "neighborhood places of worship"; and (3) "community places of worship." (*Id.* ¶ 56.)

The "residential gathering place" category permitted the use of a single-family dwelling for religious uses. (*Id.*) Mayor Presti confirmed that a special permit would automatically be approved for an application that complies with Village law. (*Id.* ¶ 60.) Plaintiffs allege the proposed law allowed OJC to acquire single-family dwellings and open them to religious activities subject to additional parking requirements, serving as a blanket variance in development coverage and doubling the percentage of the property units that can be developed for religious uses. (*See*

4

*id.* at 56.) Plaintiffs allege the initial draft of the proposed zoning law was intended "to remove impediments to the free practice of religion, such as allowing for smaller-scale places of worship customary to Orthodox Congregations which are precluded from driving on Holy Days." (*Id.* ¶ 57.) Plaintiffs allege "[a]ny secular proposal of similar size and impact would not receive the special treatment accorded to OJC by the Village." (*Id.* ¶ 60.) Plaintiffs further allege no other religious organizations or members of the community were involved in the drafting of the proposed law and "no efforts [were] made to include other views of Village residents." (*Id.* ¶ 61.)

### B. May 29, 2018 Village Planning Board Recommendation

On May 29, 2018, the Village Planning Board issued a memorandum presenting its review of the proposed zoning law. (*Id.* ¶ 64.) The memorandum stated that "[a] proliferation of houses of worship at the scale permitted by the Local Law will negatively impact homeowners by allowing for large structures to be built in single family zones." (*Id.*) The Village Planning Board recommended the Village to adopt a comprehensive plan prior to considering the proposed zoning law. (*Id.* ¶ 65.) Plaintiffs also allege the Village Planning Board was concerned with the residential places of worship category, questioned why only OJC was considered in the drafting of the proposed law, and stated that the law was "designed to favor one religious institution over another." (*Id.* ¶¶ 66–67.) The Village Planning Board recommended elimination of the category "neighborhood places of worship" because it was "too intense of a use to be permitted on standard size residential lots." (*Id.* ¶ 68.) Plaintiffs allege that the Village Planning Board's various recommendations were ignored by the Village and no revisions were made in accordance with its comments. (*Id.* ¶ 69.)

### C. Public Meetings On Proposed Zoning Law

After the initial disclosure, the Village Board held several meetings regarding the proposed

zoning law. (*Id.* ¶ 63.) The first public hearing was on June 28, 2018. (*Id.* ¶ 70.) At the meeting, Jonathan Lockland, a Village planner, explained the first draft of the proposed law and the three proposed categories of houses of worship. (*Id.* ¶ 71.) Also at the meeting was Alan Sorenson, a professional planner, who opined that the proposed law had potential to fundamentally change the nature of the community because it would allow places of worship in over 90 percent of the Village. (*Id.* ¶ 73.) The Planning Board confirmed that there was no limit as to how many residential places and neighborhood places of worship there could be on one block. (*Id.* ¶ 74.) There were also individuals who spoke at the public hearing in defense of the proposed law. An attorney for OJC stated that OJC was prepared to assist the Village in the defense of the law if the Village is sued after adopting the proposed law. (*Id.* ¶ 72.) Mayor Presti also defended why OJC was involved in the drafting and planning process. (*Id.* ¶ 75.)

  A second public hearing was held on July 24, 2018. (*Id.* ¶ 76.) A trustee of the Village confirmed at this meeting that the Village had not been enforcing its zoning laws and that people have been able to use their houses for worship without any zoning oversight. (*Id.* ¶ 78.) Mayor Presti described the process of getting applications through the Village Board as a substantial burden. (*Id.* ¶ 79.)

  Plaintiffs allege that at a Village Board meeting on August 16, 2018, Mayor Presti was asked why only one organization was asked to draft and discuss the proposed zoning law. (*Id.* ¶ 80.) The Mayor responded that OJC was the group that asked the Village to consider amending zoning laws in advocacy for their community and religious uses. (*Id.*)

  A final public hearing was held on January 15, 2019. (*Id.* ¶ 85.) At this meeting, Mayor Presti represented that the planner put this first draft proposal together back in November 2017. (*Id.* ¶ 86.)

### IV.     The New Zoning Law

The Village Board approved a resolution to adopt the New Zoning Law on February 21, 2019, adding religious house of worship amendments to the Village Zoning Laws.  (*Id.* ¶ 103.) The resolution stated that "on or about November 1, 2017, the Village Board received a written petition requesting specific text amendments to the Chestnut Ridge Zoning Code from Brooker Engineering, PLLC, in letter form, submitted on behalf of the Orthodox Jewish Coalition of Chestnut Ridge . . . ." (*Id.* ¶ 104.) Plaintiffs allege this information was incorrect because invoices showed OJC and the Village had been discussing the zoning law since August 2017. (*Id.* ¶ 105.) Plaintiffs allege the New Zoning Law contained "substantially the same text as the initial draft provided by the OJC in November 2017 despite three public hearings, several comments from the Planning Board and from independent planners hired by Plaintiffs, as well as from the citizens of the Village recommending numerous changes to the OJC Zoning Law." (*Id.* ¶ 92.)

The New Zoning Law established three categories of religious uses: residential gathering place, neighborhood places of worship, and community places of worship. (*Id.* ¶ 93.) A "residential gathering place" is defined as a use of a dedicated portion of a one-family detached residence for large gatherings of between 15 to 49 people more than 12 times a year. (*Id.* ¶ 94.) The law permits owners of residential gathering place to use off-site parking facilities on private property. (*Id.* ¶ 95.) The New Zoning Law defines a "neighborhood place of worship" as use of a structure for regularly organized religious assembly with up to 10,000 square feet of total floor area and allows for this usage in a structure with or without a residential component. (*Id.* ¶ 96.) Finally, a "community place of worship" is defined as use of a structure designed for regular organized religious assembly with more than 10,000 square feet of total floor area. (*Id.* ¶ 97.)

The New Zoning Law was submitted to the New York Department of State on February

25, 2019.  (*Id.* ¶ 107.)  On March 21, 2019, an Article 78 proceeding was filed against the Village relating to the process of tis passage of the New Zoning Law in violation of the State Environmental Quality Review Act.

## PROCEDURAL BACKGROUND

Plaintiffs CUPON, Hilda Kogut, Robert Asselbergs, and Carole Goodman commenced the instant action against Defendant the Village of Chestnut Ridge, New York, on April 18, 2019.  (ECF No. 1.)  On September 11, 2020, Defendant moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF Nos. 32–34.)  Plaintiffs opposed the motion.  (ECF No. 46.)

On September 11, 2020, a motion to intervene was filed by Proposed Intervenors Agudath Israel of America Inc., Congregation Birchas Yitzchok, Congregation Dexter Park, Congregation Torah U'tfilla, and Orthodox Jewish Coalition of Chestnut Ridge.  (ECF Nos. 36–42.)  Proposed Intervenors Congregation Birchas Yitzchok, Congregation Dexter Park, and Congregation Torah U'tfilla are religious corporations that own properties in the Village of Chestnut Ridge.  (ECF No. 38 at 4.)  Proposed Intervenor OJC is an unincorporated association of seven Orthodox Jewish congregations located in the Village of Chestnut Ridge.  (*Id.*)  And Proposed Intervenor Agudath Israel of America Inc. is a nonprofit organization that serves a broad array of Orthodox Jews and advocates for their interests.  (*Id.*)  Together, the Proposed Intervenors seek to appear in the instant action as Defendants because they allege if the New Zoning Law were to be invalidated, they would be constrained in their free exercise of religion.  (*Id.* at 5.)  The Proposed Intervenors also filed a document entitled "Memorandum of Proposed Intervenors In Support Of Partial Joinder In Motion To Dismiss Defendant Village of Chestnut Ridge, New York," (ECF No. 44.)[1]  Plaintiffs

---

[1] Proposed Intervenors proposed "Partial Joinder" in Defendant's Motion to Dismiss was filed without leave from the Court.  Proposed Intervenors were granted leave only to brief on a motion to intervene.  (*See* ECF No. 23.)

opposed the motion to intervene and filed an opposition to Proposed Intervenors' "partial joinder" in Defendant's motion to dismiss. (ECF Nos. 47 & 49.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (internal quotation omitted).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

### II. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

9

When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.    Federal Rule of Civil Procedure 24

"Rule 24 of the Federal Rules of Civil Procedure contemplates two distinct species of intervention: intervention of right under Rule 24(a), and permissive intervention under Rule 24(b)." *Giuffre v. Dershowitz*, No. 19 CIV. 3377 (LAP), 2021 WL 5233551, at *3 (S.D.N.Y. Nov. 10, 2021) (citations omitted). To intervene as of right under Rule 24(a), a proposed intervenor must meet each of the following four conditions: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by other parties. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). Alternatively, a court may permit intervention if the motion is timely and the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts evaluating as-of-right or permissive motions consider the same factors. *See 335-7 LLC v. City of New York*, 524 F. Supp. 3d 316, 326 (S.D.N.Y. 2021). However, the principal consideration for permissive intervention is whether

10

intervention will cause undue delay or prejudice to the original parties.  *Id.*

## DISCUSSION

Plaintiffs claim Defendant violated the Establishment Clause of the First Amendment. (*See* Compl.)  Defendant seeks to dismiss the Complaint on the basis that (1) Plaintiffs lack standing; (2) Plaintiffs have failed to sufficiently allege an Establishment Clause claim; and (3) two pending state court actions require abstention.  (*See* "Def. Mot.," ECF No. 34.)  As discussed below, the Court finds that Plaintiffs lack standing and, accordingly, the Court does not need to reach other issues raise.

### I. Standing

The Court first must address Defendant's challenge to subject matter jurisdiction. "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'"  *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "'[A] plaintiff must demonstrate standing for each claim and form of relief sought.'"  *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  There are three Article III standing requirements: (1) the plaintiff must have "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

"Litigants asserting an Establishment Clause claim against a State or municipal defendant must, like all civil litigants, demonstrate standing."  *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).  The Second Circuit has recognized that "because Establishment Clause injuries, by their nature, can be 'particularly elusive,'" there are three specific theories of standing entitling a

litigant to bring an Establishment Clause claim: (1) taxpayer, (2) direct harm, and (3) denial of benefits. *Id.* at 195–96 (quoting *Saladin v. City Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987)).

### A. Injury In Fact

Defendant argues Plaintiffs lack standing because no injury in fact has been alleged. (Def. Mot. at 8–14.) An injury in fact "'consists of an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *John*, 858 F.3d at 736 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegation of injury resulting from the defendant's conduct may suffice.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

After careful consideration of the Complaint, the Court finds that Plaintiffs have not pled a concrete and particularized constitutional injury. Plaintiffs claim their First Amendment rights have been violated because Defendant enacted the New Zoning Law that allegedly only benefit a single religious organization. (Compl. ¶ 1.) Plaintiffs claim the new zoning amendments "target religious uses with special favorable treatment over secular uses." (*Id.*) However, Plaintiffs have not identified any injury, nonetheless a particularized and concrete one. The law is clear that generalized grievance is insufficient to establish standing. *See Lujan*, 504 U.S. at 575 ("a suit rested upon an impermissible 'generalized grievance,' and was inconsistent with 'the framework of Article III' because 'the impact on [plaintiff] is plainly undifferentiated and 'common to all members of the public.'" (quoting *United States v. Richardson*, 418 U.S. 166, 171 (1974)). Plaintiffs have not alleged that they sought and were denied any benefits. *See Gagliardi v. City of Boca Raton*, 197 F. Supp. 3d 1359, 1365 (S.D. Fla. 2016) (finding no standing where plaintiffs "fail[ed] to identify what benefit they have been excluded from"). Plaintiffs merely allege that

Defendant's actions "serve the purposes of OJC [and] have the effect of favoring the OJC" without identifying a single instance of how they were disfavored under this new law. (Compl. ¶ 1.) Plaintiffs argue they satisfy the requirements for Article III standing because they "were excluded from the process, disenfranchised by their municipal government, and face constant reminders that the fundamental nature of their neighborhoods has changed in order to promote the endorse religion." ("Pls. Opp.," ECF No. 46, at 6–7.) But Plaintiffs do not allege how they were excluded from the process. To the contrary, Plaintiffs allege Defendant held multiple public meetings to discuss the proposed zoning law and that attendees were able to raise concerns and challenge the mayor on the drafting of the proposal. (*See* Compl. ¶¶ 70–79, 85–86.) Without identifying a single instance in which Plaintiffs were denied benefits, their allegations of injuries are merely "conjectural or hypothetical" and are insufficient to establish injury in fact. *Lujan*, 504 U.S. at 560.

### B. Standing in Establishment Clause Cases

But, unlike most litigated injuries, the harm from violation of the Establishment Clause "is often inherently generalized." *Montesa*, 836 F.3d at 196 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982)). As a result, three theories of standing in Establishment Cases were "developed in response to the concerns that gave rise to [the courts'] prudential standing jurisprudence, and they have evolved to allow only particular types of Establishment Clause injuries to be adjudicated." *Id.* Plaintiffs argue that Plaintiffs Hilda Kogut, Robert Asselbergs, and Carole Goodman (collectively "Individual Plaintiffs") satisfy individual standing in Establishment Clause cases because they have taxpayer standing, direct exposure standing, and denial of benefit standing. (Pls. Opp. at 7–10.)

13

**1. Taxpayer Standing**

First, Individual Plaintiffs claim they have taxpayer standing. Ordinarily taxpayers do not have standing to challenge expenditures of government funds. *See Com. Of Massachusetts v. Mellon*, 262 U.S. 447 (1923). In *Flast v. Cohen*, 392 U.S. 83 (1968), the Supreme Court recognized an exception to that rule and permitted a taxpayer to bring an Establishment Clause action when there is "'a logical link between [his status as a taxpayer] and the type of legislative enactment attacked' as well as 'a nexus between that status and the precise nature of the constitutional infringement alleged.'" *DeStefano v. Emergency Housing Grp., Inc.*, 247 F.3d 497, 405 (quoting *Flast*, 392 U.S. at 102); *see also Bowen v. Kendrick*, 487 U.S. 589, 620 (1988).

Individual Plaintiffs are residents and municipal taxpayers of the Village. (Compl. ¶¶ 8–11.) Individual Plaintiffs argue that they have taxpayer standing because the Village incurred expenses in hiring a planning firm to review the proposed zoning law drafted by OJC. (Pls. Opp. at 8–9.) The Second Circuit has stated that "a municipal taxpayer's relationship to the municipality is 'direct and immediate' such that the taxpayer suffers concrete injury whenever the challenged activity involves a measurable appropriation or loss of revenue." *United States v. City of New York*, 972 F.2d 464, 466 (2d Cir. 1992). But "municipal taxpayer standing requires [the] ability to identify a 'measurable appropriation or loss of revenue' attributable to the challenged activities." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 73 (2d Cir. 2001) (quoting *Board of Educ. v. New York State Teachers Retirement System*, 60 F.3d 106, 110–11 (2d Cir. 1995)). Here, Plaintiffs merely allege that the Village was billed by its planner, NPV, in its reviewed of the proposed zoning law. (*See* Compl. ¶¶ 44–50.) Although Plaintiffs reference specific billing entries and dates, Plaintiffs have not alleged any amount of measurable appropriation. *See Novesky v. Goord*, 120 F. App'x 384, 385–86 (2d Cir. 2005) (finding no "measurable appropriation" where plaintiff

14

challenges elements of rehabilitation programs funded by DOC's general budget and administered by government employees); *cf. Lown v. Salvation Army, Inc.*, 393 F. Supp. 2d 223, 238–39 (alleging ten percent of the face value of Social Services for Children's government contracts were diverted to defendant for religious purposes). These allegations do not constitute the type of "direct injury" to confer standing. *See Novesky*, 120 F. App'x at 386. It is the Plaintiffs' burden to establish the existence of federal jurisdiction. *See Lujan*, 504 U.S. at 560. Without identifying a measurable amount of the alleged appropriations, Plaintiffs have failed to meet such burden. *See Novesky*, 120 F. App'x at 385–86. Accordingly, the Court finds that Individual Plaintiffs do not have taxpayer standing to bring forth this action.

**2. Direct Exposure Standing**

Next, Individual Plaintiffs claim they have direct exposure standing. (Pls. Opp. at 9–10.) Standing in an Establishment Clause may also "rest on the plaintiff's direct exposure to the challenged activity." *Altman*, 245 F.3d at 72. To establish direct exposure standing, Plaintiffs must allege they are "directly affected by the laws and practices against which their complaints are directed." *Montesa*, 836 F.3d at 196 (citing *School of Dist. Of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 224 n.9 (1963)). The Second Circuit precedent "reveals that direct exposure cases tend to occur in two different contexts: 1) the plaintiff is exposed to and affected by a law that on its face establishes religion ('religion law' cases) or 2) the plaintiff is exposed to and affected by a religious expression or message sponsored or promoted by the government, ('expression' cases)." *Id.* In the "religious law" cases, the prohibition or mandate is grounded in or significantly influenced by a religious tenet or principle and directly and immediately injures a plaintiff's economic well-being. *Id.* at 197 (collecting cases). In the "expression" cases, the injury is not economical and "often occurs when a plaintiff comes into contact with, or is exposed to, a

government-promoted expression of religion." *Id.* The Second Circuit has stated that, because the injury in "expression" cases can be elusive, "the connection between the plaintiff and the challenged action—i.e. the 'exposure'—must be direct and immediate in order to satisfy the requirement that the plaintiff have a 'direct and personal stake in the controversy.'" *Id.* (citing *Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2d Cir. 1992)).

Individual Plaintiffs claim they have direct exposure standing because the New Zoning Law was rushed into law and gives preferential treatment to OJC and religious uses over secular uses, such that "the construction of an untold number of houses of worship" will serve as "constant reminders of the law and its endorsement of religion." (Pls. Opp. at 10.) This is an insufficient basis under either line of cases for finding direct exposure standing. First, Plaintiffs have not alleged any economic injuries from the New Zoning Law to establish standing under the "religion law" cases. *See Montesa*, 836 F.3d at 196. Second, Plaintiffs have not alleged they "c[ame] into contact with, or [were] exposed to, a government-promoted expression of religion." *See id.* at 197. Plaintiffs claim the Village improperly enacted a zoning amendment that permitted expanded religious use of certain places. However, nowhere in the Complaint is any allegation that they were directly exposed to any expression of religion. As Individual Plaintiffs concede, the number of houses of worship to be constructed under the New Zoning Law are "untold" and they only worry they "will be faced with constant reminders" of religious endorsements. (Pls. Opp. at 10.) These alleged hypothetical exposures as a result of the New Zoning Law do not amount to direct exposures to religious expressions. *See Montesa*, 836 F.3d at 189–99 (finding no standing where deprivations of educational services to student-plaintiffs were indirect effects that were "too far removed, too attenuated, from the alleged unconstitutional component of the act of funneling public monies"). The Court is not otherwise persuaded by the "expression" cases cited by

Plaintiffs. Indeed, all those cases are distinguishable because they involved physical placement of religious expressions in public areas. *See Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach*, 778 F.3d 390 (2d Cir. 2015) (construction of an eruv); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479 (2d Cir. 2009) (displays of religious materials such as prayer request information, prayer cards, prayer request deposit boxes, and advertisements and donation boxes for missions). Accordingly, Individual Plaintiffs do not have direct exposure standing.

### 3. Denial of Benefits

Finally, Individual Plaintiffs claim they have denial of benefit standing. Litigants could have standing to bring an Establishment Clause claim if they allege a denial of benefits. *See Montesa*, 836 F.3d at 295. For example, the Supreme Court has stated that "plaintiffs may demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011). As explained *supra* in Section I.A., Plaintiffs have failed to allege in the Complaint that they have been denied any benefits. Accordingly, Individual Plaintiffs do not have denial of benefits standing to bring an Establishment Clause claim.

### C. CUPON's Standing

Defendant argues that Plaintiff CUPON lacks associational or organization standing to file this action. (Mot. at 5.)

### 1. Associational Standing

CUPON claims it as associational standing. (Pls. Opp. at 7.) An organization has associational standing if it can show that (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect relate to the organization's purpose; and (3) neither the asserted claim nor the requested relief require the participation of individual members of the

lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). CUPON is a "civic membership organization that advocates for, among other things, sensible and fair land use reform for all citizens of Chestnut Ridge." (Compl. ¶ 5.) CUPON claims it has satisfied all three prongs of associational standing. This Court disagrees. CUPON has not satisfied the first prong of associational standing—that CUPON's members would have standing to sue in their own right. Plaintiffs claim that the first prong is satisfied because all Individual Plaintiffs are members of CUPON. (Pls. Opp. at 13.) But, as analyzed above, Individual Plaintiffs have failed to establish individual standing to bring forth this action, *supra* Section I. Indeed, it is Plaintiffs' burden of proving by preponderance of evidence that subject matter jurisdiction exists. *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). CUPON has also not made other allegations to show that other members of its organization would have standing to bring forth this action. Accordingly, CUPON does not have associational standing.

## 2. Organizational Standing

CUPON claims it has organizational standing. (Pls. Opp. at 11–12.) To have organizational standing, an organization must establish that there is (1) an imminent injury "to itself as an organization (rather than to its members) that is 'distinct and palpable'"; (2) the injury is fairly traceable to the defendant's actions; and (3) the court can redress the injury. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017). For organizational standing, an organization is "just another person—albeit a legal person—seeking to vindicate a right." *N.Y. Civil Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). The Court finds that the Complaint contains no allegations of any injuries to CUPON as an organization. The Complaint only contains allegations that "CUPON opposed the OJC Zoning Law . . . [and] advocated that the Village conduct a comprehensive plan process and

then amend its zoning laws in conformance with such a comprehensive plan . . . ." (Compl. ¶ 5.) CUPON does not allege it has suffered any injuries to its organization's activities or that it was forced to divert resources from current activities because of the enactment of the New Zoning Law. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests"); *Centro de la Comunidad Hispana de Locust Valley*, 868 F.3d at 111 ("where an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer organizational standing"). Accordingly, CUPON lacks organizational standing.

Having found that all Plaintiffs lack standing to bring the instant action, this Court finds that it lacks subject matter jurisdiction. Accordingly, this case must be DISMISSED, and the Court DENIES Proposed Intervenors' motion to intervene as moot.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss (ECF No 32) and DENIES Proposed Intervenors' Motion to Intervene as moot (ECF No. 36). Plaintiffs' Complaint is DISMISSED without prejudice for lack of subject matter jurisdiction. The Second Circuit has made clear that "where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (emphasis in original). Accordingly, the Clerk of Court is respectfully directed to (1) enter judgment in favor of Defendant Village of Chestnut Ridge, New York, without prejudice; and (2) terminate the motions at ECF Nos. 32 & 36.

Dated: September 30, 2022
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge